Owen, C. J.
The proceeding below was in mandamus do compel the sheriff of Cuyahoga county to issue by his proclamation a notice of an election of a circuit judge of the eighth circuit of Ohio, at the general election to be held on the first Tuesday after the first Monday of November next. The case involves the construction of an act of the general assembly, passed March 21, 1887, to amend an act relating to the organization and jurisdiction of the circuit and other courts, passed February 7, 1885, and to create the eighth circuit. The act purports, in words, to provide for the election of three judges of the circuit court — one for the new eighth, and two for the sixth circuit, on the “first Tuesday of November next/’ which will be one week prior to the day of the general fall election.
It is claimed on behalf of the sheriff, that the'act is too plain to admit of construction; while the relator below maintains that it was not within the legislative intent to provide for a special election of three circuit judges one week prior to the *344 general fall election. Several considerations support the latter view. The general Jaw (section 2978 of the Revised Statutes), provides for the election of circuit judges on the Tuesday after the first Monday of November of each year. The act in question does not purport to be a special act. It is amendatory of the general act. It was prompted by an overcrowded condition of the dockets, and a consequent necessity for additional judicial force". Had a special election been in the contemplation of the general assembly, it is not probable that it would have been delayed until one week before the general election, to be then held in twelve counties, (at a cost of several thousand dollars) in view of the fact that in two of the counties a registration is to be made, the ensuing work of which, in every probability, could not be completed in time for the special election. It was said by this court, in Moore v. Given, 39 Ohio St. 663. “That the law does not require vain, absurd, or impossible things of men, is one of its favorite maxims; and it is the plain duty of the courts, in the intepretation of a statute, unless restrained by the rigid and inflexible letter of it, to lean most strongly to that view which will avoid absurd consequences, injustice and even great inconvenience ; for none of these can be presumed to have been within the legislative intent.” See also as strongly supporting this rule of construction: Hirn v. State, 1 Ohio St. 20; Slater v. Cave, 3 Ohio St. 80.
In Tracy v. Card, 2 Ohio St. 431, it is said by Thurman, J.: “ "While, on the one hand, the judiciary should be careful not to make its office of ex])ounding statutes a cloak for the exercise of legislative power, on the other hand it is equally bound not to stick in the mere letter of a law, but rather to seek for its reason and spirit in the mischief that required a remedy, and the general scope of the legislation designed to affect it.” In this case the word “ administrator ” was, by construction, incorporated into an act and inserted after the word “ executor.” as this seemed to the court to be within the clear legislative intent. In Fosdick v. Perrysburg, 14 Ohio St. 472, the court was construing an act passed May 3, 1852, and providing that it should take effect “from and after the 15th day of May *345 next.” The court, in view of all its provisions, and of facts that appeared by the legislative journals, held that the act spoke from April 28, 1852, and took effect from the 15th of May next thereafter, while the letter of it would have postponed it taking effect tó May, 1853.
If it be conceded, however, that the letter of this act is rigid and inflexible, and that it leaves no room for construction, there is another and controlling view which, in the opinion of each member of the court, determines its construction.
As we have already observed, the act purports to be general. There is nothing to indicate, in the slightest degree, that it was to be a special enactment, or to provide for a special election, except that the first Tuesday of November is named as the day of the election of the judges to fill the offices created, or intended to be created, by it. Six years in every seven the day named in the act would answer to the call of the general act fixing the day for the election of circuit judges. Then there is noticed in this act the entire absence of any provision for conducting the election on the day named.
No machinery is provided for, nor the slighest allusion made to the manner of conducting, the election, or making and certifying the returns and ascertaining the result. Every act providing for a special election of a judge, enacted during the last thirty years, which we have been able to find upon our statute books, contains comprehensive provisions for the conduct of such elections, making returns thereof, and ascertaining the result, either by making the general election laws applicable thereto, or otherwise, by specific provision.
Such provision is indispensable to an effective special election law. Only partial provision is made by our general election laws for conducting and declaring the result of special elections. Section 2922, of chapter 2 of title XIY, of the Revised Statutes, provides that: “ Except where it is otherwise provided, all public elections shall be held and conducted according to the provisions of this chapterThis chapter (2) provides for conducting the election, making the returns thereof, and for making and transmitting the proper certificates thereof to the respective clerks of the counties. Beyond this *346 it is silent. There is no similar provision making the prescribed modes of opening the returns and certifying the results, the rule in “ all public elections.” All such provisions arc found in other and subsequent chapters of Title XIV, relating to elections. Section 2994, of chapter 4, provides, among other things, for certifying returns to the clerk of the court, in the judicial election district having the largest population. This clerk makes out the necessary election certificate, etc., without which, and the commission to which it entitles the successful candidate, the election would be an idle form and incur a useless expense. These provisions, as we have said, are no part of the act before us, either by direct reference or by any general enactments. The inevitable conclusion is that if the act before us is special so far as it attempts to provide for a special election of circuit court judges, it is a vain and idle form by reason of its failure to provide any means of ascertaining and declaring the result, and must fall of its own inherent infirmity. It remains to inquire if the entire act must fall. If controlling effect is sought to be given to the fact that the language which creates the three new judgeships is that which fixes the day of election, the obvious answer is that this is not and was not intended to be an act to fix a day for holding an election. It is an act to create a new judicial circuit and three new judgeships. We find nothing in its letter so rigid or inflexible as to stand in the way of giving effect to this plain intent of the general assembly. The foregoing considerations call upon us to construe this act to be one for the creation of this new circuit, and these new judgeships, according to the unmistakable legislative intent, and that it is not necessary that we should declare that the act must wholly perish — the last extremity to which judicial construction should go — because of the palpable inadvertence in attempting to provide a day of election.
Recognizing as we do the existence of these new judgeships by virtue of the act before us, and discovering no reason why they should not be filled at the time appointed by the general law for the election of circuit court judges — which remains unaffected by this act — there is shown no sufficient reason why *347 tbe notice of sucb election should .not be proclaimed by tbe sheriff, tbe judgment below, ordering him to issue sucb proclamation, is ' Affirmed.